IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-77-FL

| | |
|---|---|
| CHERYL ANN CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Cheryl Ann Caldwell ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be granted, Defendant's Motion for Judgment on the Pleadings [DE-23] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on November 23, 2010 (Tr. 96, 111), alleging disability beginning June 12, 2009 (Tr. 170). The application for a period of disability and DIB was denied initially and upon reconsideration, and a request for

hearing was filed. (Tr. 96, 111, 136.) On July 26, 2012, a hearing was held before Administrative Law Judge Robert J. Phares ("ALJ"), who issued an unfavorable ruling on August 2, 2012. (Tr. 36, 41.) On September 30, 2013, the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since June 12, 2009. (Tr. 27.) Next, the ALJ determined Plaintiff had the following severe impairments: "osteoarthritis; obesity; [gastroesophageal reflux disease]; and lumbar spondylosis at L4-L5." (*Id.*) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27-28.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform less than the full range of light work

"in that she could occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, stand and walk for 30 minutes and then require an option to sit for five minutes with no crouching, kneeling, or crawling." (Tr. 28.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 34.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of her past relevant work as a teacher's assistant. (*Id.*) The ALJ went on to determine that there were other jobs that Plaintiff could perform existing in significant numbers in the state and national economies. (Tr. 34-35.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on three grounds. Plaintiff first contends that the ALJ failed to give appropriate consideration to the medical opinion of the state agency consulting examiner, Dr. Judith Staneata. Second, Plaintiff asserts that the ALJ failed to ascertain whether the testimony of the Vocational Expert ("VE") was consistent with the *Dictionary of Occupational Titles* ("*DOT*"). Lastly, Plaintiff claims the ALJ's credibility finding is not supported by substantial evidence.

### A. Consulting Examiner

First, Plaintiff contends that the ALJ erred in the weight he credited to the state agency consulting examiner, Dr. Staneata. Dr. Staneata gave two opinions, one dated February 5, 2011, and one dated June 9, 2011. (Tr. 470-79.) On February 5, 2011, Dr. Staneata stated:

> The number of hours [the claimant] can stand is about 6 hours, walk is about 30 minutes to one hour. The number of hours she can sit is about 30 minutes before she needs to change position, but she can sit longer. The amount of weight she can carry is 10 pounds frequently and 15 pounds occasionally. The amount of weight claimant can lift is 15 pounds occasionally and 10 pounds frequently. Manipulative limitations, based on today's exam, the claimant should be able to reach, handle, feel and grasp finger [sic] frequently and occasionally with limitations in bilateral hands. Postural limitations, based on today's exam she is

4

Case 5:14-cv-00077-FL   Document 25   Filed 12/31/14   Page 4 of 11

able to bend some, but is very limited and she cannot stoop, crouch or squat frequently or occasionally. Visual or communicative limitations, she has reading glasses, assistive device to ambulate, none used. Range of motion, cervical spine forward flexion is about 45 degrees bilaterally, extension 45 degrees bilaterally, lateral flexion 45 degrees bilaterally and rotation 80 degrees bilaterally. Thoracolumbar spine forward flexion is about 60 degrees bilaterally, extension 15 degrees bilaterally, lateral flexion 15 degrees bilaterally and rotation 15 degrees bilaterally. Shoulder forward elevation 120 degrees on the right and 100 degrees on the left, backward elevation 40 degrees bilaterally, abduction is 90 degrees on the right and 120 degrees on the left, adduction 30 degrees bilaterally, external rotation 60 degrees bilaterally, internal rotation 60 degrees bilaterally. Elbow flexion, pronation, and supination within normal limits bilaterally. Wrist dorsiflexion, palmer flexion, ulnar deviation, and radial deviation within normal limits bilaterally. Hip flexion is 75 degrees on the right, 100 degrees on the left, extension within normal limits bilaterally, abduction 40 degrees bilaterally, and adduction 20 degrees bilaterally, internal rotation 40 degrees bilaterally, external rotation 50 degrees bilaterally. Knee flexion-extension within normal limits bilaterally. Ankle foot dorsiflexion, plantar flexion, inversion and eversion within normal limits bilaterally.

Based on today's exam and physical findings, the maximum functional capacity for the patient for standing and walking, for standing medium to heavy, for walking is less than sedentary to sedentary, for sitting, less than sedentary. Assistive device, not medically necessary. Lifting and carrying occasionally is sedentary to light and lifting and carrying frequently is light to medium.

(Tr. 479.)

In June, Dr. Staneata gave the following opinion:

The number of hours the claimant can stand in an 8-hour workday is about four to five hours. Number of hours the claimant can walk is about five minutes. Number of hours the claimant can sit is without restrictions. The amount of weight the claimant can carry is five pounds frequently, ten pounds occasionally. The amount of weight the claimant can lift is ten pounds occasionally, five pounds frequently. Manipulative limitations, based on today's exam, the claimant should be able to reach, handle, feel, grasp and finger frequently or occasionally, but is limited secondary to numbness in her bilateral hands, right more than left. Postural limitations based on today's exam, the claimant should be able to bend some, but is limited. She is unable to stoop, crouch, or squat frequently or occasionally. Visual or communicative limitations, none. Assistive device to ambulate, none. Range of motion, cervical spine forward flexion, extension, lateral flexion, rotation within normal limits bilaterally. Thoracolumbar spine, forward flexion is about 45 degrees bilaterally, extension 10 degrees bilaterally, lateral flexion 10 degrees bilaterally, and rotation 15 degrees bilaterally. Shoulder forward elevation, backward elevation, abduction, adduction, external rotation, and

5

> internal rotation within normal limits bilaterally. Elbow flexion, pronation and supination within normal limits bilaterally. Hip flexion, extension, abduction, adduction, internal rotation and external rotation within normal limits bilaterally. Knee flexion and extension within normal limits bilaterally. Based on today's exam and clinical findings, the claimant's maximum functional capacity for standing and/or walking is about four to six hours to light to medium. Sitting, no restriction. Assistive device, none used and it might be helpful for long distances and uneven terrain. Lifting and carrying occasionally is less than sedentary. Lifting and carrying frequently is sedentary to light.

(Tr. 474.)

The ALJ analyzed Dr. Staneata's opinions stating,

> Both opinions given by Dr. Staneata are being given little weight by the undersigned because although the doctor was able to personally examine the claimant on two separate occasions, the doctor's limitations are very vague and inconsistent with the treatment records for the claimant. Also the doctor['s] examinations occurred only four months apart, which would make it hard to believe that the claimant had deteriorated so in that amount of time without it being noted by her treating physicians.

(Tr. 34.)

The regulations require the ALJ to consider the medical opinions of any state agency medical consultants. 20 C.F.R. § 404.1527(e)(2); *see also* 20 C.F.R. § 404.1527(c). A "medical opinion" is a "judgment [ ] about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). When evaluating medical opinions from a medical source, the ALJ must consider certain factors including: examining relationship, treatment relationship, length of treatment relationship, frequency of examination, nature and extent of treatment relationship supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). Significantly, "[u]nless a treating source's opinion is given controlling weight, the **[ALJ]** must explain in the decision the weight given to the opinions of a State agency medical or psychological

consultant . . . . " *Id; see also* SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996) (stating that ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions").

Here, the ALJ erred in his analysis of Dr. Staneata's medical opinions given on February 14, 2011, and June 9, 2011. (Tr. 471-79.) The medical record indicates that Plaintiff consistently complained of low back pain and leg pain. Plaintiff saw Dr. Staneata twice within a four month period, during which time Dr. Staneata's opinion of Plaintiff's work capabilities changed. The ALJ criticized the limitations imposed by Dr. Staneata as vague yet provides no explanation for his finding in this regard. Moreover, it is unclear how the ALJ could reach such a conclusion, as Dr. Staneata's opinions appear very specific and address virtually all of the applicable exertional and non-exertional functions. The ALJ further found that the limitations set out by Dr. Staneata are inconsistent with Plaintiff's treatment records. The ALJ points to a negative straight leg raise test from May 2011. However, during the relevant time period, there were four positive straight leg raise tests that he failed to mention in his analysis, occurring on the following dates: June 12, 2008 (Tr. 327), May 5, 2009 (Tr. 401), May 6, 2011 (Tr. 552), and July 19, 2011 (Tr. 561). Additionally, the ALJ discusses the MRI that was performed on April 26, 2011, but does not explain how the results of that test are inconsistent with Dr. Staneata's opinion. The MRI impressions were: "[d]isc bulging and facet ligamentous changes L4-L5 and L5-S1 producing moderate spinal canal narrowing"; [s]evere neural forminal narrowing bilaterally at L5-S1 and moderate-to-severe narrowing bilaterally at L4-L5"; and "[m]ultilevel disc bulges most prominently in the T7-T8 and centrally at T6-T7 with come cord abutment and slight flattening but no obvious signal changes. No evidence of fracture." (Tr. 483-84.)

7

Case 5:14-cv-00077-FL   Document 25   Filed 12/31/14   Page 7 of 11

Lastly, the ALJ stated that the four-month period of time between Dr. Staneata's opinions "make it hard to believe that the claimant had deteriorated so in that amount of time without it being noted by her treating physicians." (Tr. 34.) However, in the intervening time period, Plaintiff had the MRI discussed above, two positive straight leg raise tests, was referred to Dr. Kurt Voos for a surgical consultation (Tr. 564-66), and underwent three epidural steroidal injections (Tr. 555-63). The medical records indicate that the first injection was more effective than the second (Tr. 559), but there are no further records to indicate whether or not the injections resolved her pain. .

Because of the lack of discussion provided by the ALJ concerning his analysis of Dr. Staneata's medical opinion, the undersigned cannot determine whether his findings are supported by substantial evidence. Thus, the case should be remanded to the Commissioner for further findings.

**B.     VE Testimony**

Secondly, Plaintiff asserts the ALJ failed to ask the VE whether her testimony was consistent with the *DOT*.

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> - Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> - If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

The ALJ did not inquire of the VE whether her testimony was consistent with the *DOT*. He asked the VE, "If I ask you a hypothetical question, what type of professional resources do you

8

Case 5:14-cv-00077-FL   Document 25   Filed 12/31/14   Page 8 of 11

typically use in preparing your response?" (Tr. 77.) The VE responded, "The <u>Dictionary of Occupational Titles</u>, [its] companion supplements, US Census Bureau, and Employment Security Commission resources." (*Id.*) Subsequently, in his decision, the ALJ stated, "Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT] expect [sic] for the sit/stand option, which is based on the experience of the vocational expert." (Tr. 35.) Plaintiff argues that such a discussion is deficient because the sit/stand option is inconsistent with the DOT and that "the need to obtain explanatory testimony from the VE arises when the ALJ's hypothetical tells the VE to assume a sit/stand option." (Pl.'s Mem. at 15.)

Under SSR 00-4p, an ALJ has an "affirmative responsibility" to ask the about possible conflicts. SSR 00-4p, 2000 WL 1898704, at *4. The ALJ never asked the VE whether there were any conflicts between her testimony and the *DOT*, nor did he instruct her to indicate if her testimony presented conflicts. This was in error. However, as recognized by this court, the *DOT* is silent as to a sit/stand option. *Taylor v. Colvin*, No. 5:12-CV-779-FL, 2014 WL 1233042, at *5 (E.D.N.C. March 25, 2014) (citing *Lusk v. Astrue*, No. 1:11-CV-196, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013)). Consequently, the VE's testimony did not conflict with the *DOT*. *Thompson v. Astrue*, No. 8:09-CV-1968, 2010 WL 3878729 (D.S.C. June 16, 2010), *report and recommendation adopted*, 2010 WL 3880047 (D.S.C. Sept. 28, 2010), *aff'd*, 442 F. App'x 804 (4th Cir. 2011) ("Because the *DOT* does not address the availability of a sit/stand option, it was perforce not irreconcilable with the VE's testimony."). Because there is no conflict, the error is harmless. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (holding that no conflict appeared to exist and therefore, the ALJ's failure to ask the VE about the possible conflicts was harmless); *Wellington v. Astrue*, No. 12 Civ. 3523(KBF), 2013 WL 1944472, at *4 (S.D.N.Y. May

9, 2013) (finding harmless any violation of SSR 00-4p as there was no actual conflict between the VE and the *DOT* regarding the sit-stand option); *Thompson*, 2010 WL 3878729, at *5 (finding no conflict when the *DOT* did not address the sit-stand option, hence no duty of explanation arose, and the ALJ's failure to inquire was harmless error); *Corbett v. Astrue*, 2006 WL 5527015, at *62 (N.D.W.Va. Mar. 24, 2006) (finding that "the lack of a sit-stand option in the DOT does not conflict with the VE's testimony that certain jobs would be available with a sit-stand option in the national economy").

### C. Credibility

Finally, Plaintiff asserts that the ALJ erred in assessing her credibility. (Pl.'s Mem. at 16-20.) Given the undersigned's recommendation that the case be remanded for further consideration of Dr. Staneata's medical opinion, there exists a substantial possibility that the Commissioner's credibility finding may be different on remand. Accordingly, the undersigned expresses no opinion whether the Commissioner erred in assessing Plaintiff's credibility.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-23] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon

grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 31st day of December 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge